No. 23-13973

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**
**Plaintiff/Appellee,**

**v.**

**ANDRE FRANKLIN,**
**Defendant/Appellant.**

_____

**ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
(3:22-cr-00097-RAH-SMD-2)**

_____

**BRIEF OF THE APPELLANT**

**J.D. Lloyd
The Law Office of J.D. Lloyd, LLC
2320 Arlington Ave., S.
Birmingham, AL 35205
O. 205-538-3340
JDLloyd@JDLloydLaw.com**

*Counsel for Appellant*

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
|    **PLAINTIFF-APPELLEE,** | ) | **APPEAL NO. 23-13973** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ANDRE FRANKLIN,** | ) | |
|    **Defendant, Appellant.** | ) | |

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

The appellant, Andre Franklin, through undersigned counsel, pursuant to Fed. R. App. P. 26.1, 11th Cir. R. 26.1-1, and 11th Cir. R. 26.1-2(a) certifies that the following persons may have an interest in the outcome of this case:

1.    Blanchard, William Rives, Jr., counsel for defendant/appellant in the district court;

2.    Counts, Eric, assistant United States Attorney in the district court;

3.    Davidson, Kevin, assistant United States Attorney in the district court;

4.    Doyle, Hon. Stephen Michael, magistrate judge;

5.    Huffaker, Hon. R. Austin, district court judge;

6.    Lloyd, John Douglas "J.D.", counsel for defendant/appellant on appeal;

7.    Presley, Preston Larry, counsel for defendant/appellant in the district court;

8.    Skier, Andrew M., counsel for defendant/appellant in the district court;

9.    Talley, Brett J., counsel for defendant/appellant on appeal;

10.   The United States of America, Plaintiff/Appellee.

/s J.D. Lloyd
J.D. Lloyd

*Counsel for Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 34(a), F.R.A.P., the Defendant-Appellant does not request oral argument because it would not significantly aid in the decisional process.

# TABLE OF CONTENTS

Certificate of Interested Persons .................................................................i

Statement Regarding Oral Argument ......................................................iii

Table of Citations ...................................................................................vi

Statement of Jurisdiction.......................................................................viii

Statement of the Issues...........................................................................1

Statement of the Case...............................................................................2

    1.  Course of Proceedings Below ...........................................................2

    2.  Statement of the Facts ....................................................................4

    3.  Standard of Review ........................................................................8

Summary of the Argument ......................................................................9

Argument.................................................................................................10

I.  The district court erred by allowing the United States to present testimony of speculative interpretive commentary regarding wiretapped phone calls.............................................................................10

II. The district court committed plain error by admitting Government Exhibit 12, laboratory testing analysis, through the case agent in violation of Mr. Franklin's Sixth Amendment right to confront his accuser..................................................................................................17

III.  Mr. Franklin is entitled to a new sentencing hearing due to procedural and substantive sentencing errors.................................26

iv

A. The district court committed a plain error by miscalculating Mr. Franklin's criminal history score…….…..................................27

B. The district court erred by failing to adequately consider the § 3553(a) sentencing factors……………………………….………..33

Conclusion ....................................................... 36

Certificate of Compliance......................................... 37

Certificate of Service .............................................. 37

## TABLE OF CITATIONS

**Cases**

*Alabama v. Shelton*, 535 U.S. 654 (2002) ........................................ 28, 31

*Bullcoming v. New Mexico*, 564 U.S. 647 (2011) ........................... passim

*Crawford v. Washington*, 541 U.S. 36 (2004) ........................................ 18

*Gall v. United States,* 552 U.S. 38 (2007) .............................................. 27

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) ..................... 19, 22

*Molina-Martinez v. United States*, 578 U.S. 189 (2016) ........................ 32

*United States v. Acuna-Reyna*, 677 F. 3d 1282 (11th Cir. 2010) ...... 29, 30

*United States v. Aguillard*, 217 F.3d 1319 (11th Cir. 2000) ............. 11, 24

*United States v. Alfaro-Moncada*, 607 F. 3d 720 (11th Cir. 2010) ......... 27

*United States v. Bankston*, 945 F.3d 1316 (11th Cir. 2019) ............. 31, 32

*United States v. Beckles*, 565 F.3d 832 (11th Cir. 2009) ........................ 31

*United States v. Charles*, 722 F.3d 1319 (11th Cir. 2013) ...................... 24

*United States v. Dicker*, 853 F.2d 1103 (3d Cir. 1988) .......................... 16

*United States v. Dukagjini*, 326 F.3d 45 (2d. Cir. 2003) ........................ 12

*United States v. Emmanuel*, 565 F.3d 1323 (11th Cir. 2009) ................. 12

*United States v. Freeman*, 498 F.3d 893 (9th Cir. 2007) ........................ 16

*United States v. Freeman*, 730 F.3d 590 (6th Cir. 2013) ................. 15, 16

*United States v. Garcia*, 413 F.3d 201 (2d Cir. 2005).............................16

*United States v. Garcia,* 447 F.3d 1327 (11th Cir. 2006) .......................12

*United States v. Gbenedio*, 95 F.4th 1319 (11th Cir. 2024)....................15

*United States v. Hawkins*, 934 F.3d 1251 (11th Cir. 2019)............ passim

*United States v. Holt*, 777 F.3d 1234 (11th Cir. 2015) ...........................11

*United States v. Kilpatrick*, 798 F.3d 365 (6th Cir. 2015).....................15

*United States v. Livesay*, 525 F.3d 1081 (11th Cir. 2008) ......................34

*United States v. Rodriguez*, 398 F.3d 1291 (11th Cir. 2005)...... 11, 17, 24

*Williams v. Illinois*, 567 U.S. 50 (2012) ...........................................21, 22

## Statutes

18 U.S.C. § 3231 ...................................................................................vii

18 U.S.C. § 3553(a) .................................................................... 4, 33, 34

21 U.S.C. §§ 841 .......................................................................................2

28 U.S.C. § 1291 ..................................................................................vii

## Other Authorities

U.S. Const. amend. VI...........................................................................18

U.S.S.G. Ch. 5, Part A...........................................................................30

U.S.S.G. § 4A1.2 ...................................................................................28

## STATEMENT OF JURISDICTION

This is a direct appeal from Andre Franklin's criminal conviction and resulting sentence. Doc. 398. The United States District Court for the Middle District of Alabama had original subject matter jurisdiction pursuant to 18 U.S.C. § 3231. The district court entered judgement on December 1, 2023. Doc. 392. A timely notice of appeal was filed on December 5, 2023. Doc. 398. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

### I.

Did the district court commit plain error by allowing the lead investigator to offer improper opinion testimony on the meaning of wire-tapped conversations in violation of *United States v. Hawkins*, 934 F.3d 1251 (11th Cir. 2019)?

### II.

Did the district court commit plain error by allowing the United States to admit Exhibit 12, chemical analysis reports, through the lead investigator in violation of Mr. Franklin's constitutional confrontation rights?

### III.

Is Mr. Franklin entitled to a new sentencing hearing due to procedural and substantive sentencing errors?

## STATEMENT OF THE CASE

### 1. Course of Proceedings Below

On April 13, 2022, a grand jury of the Middle District of Alabama indicted Mr. Franklin (and 9 other individuals) of conspiring to distribute and possess with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846. Doc. 1. The indictment alleged that the co-called drug conspiracy started on an "unknown" date and continued to the date of the April 2022 indictment. *Id.*

Prior to trial, Mr. Franklin moved to preclude the United States from offering improper opinion testimony, including testimony on "drug jargon," in accordance with this Court's holding in *United States v. Hawkins*, 934 F.3d 1251 (11th Cir. 2019). Doc. 244. At a pretrial hearing on the motion, the United States offered that it would not go outside permissible testimony on coded drug language in accordance with *Hawkins*, 934 F.3d 1251. Doc. 423 at 4-5. There were no further discussions of the matter.

Mr. Franklin proceeded to a joint trial with one of his co-defendants, Kahlia Nichelle Washington. Doc. 423 at 2; Doc. 432 at 1. Although all

2

other co-defendants had entered pleas in their cases, none of these individuals testified at trial. Instead, the United States' case against both Mr. Frankin and Ms. Washington focused on (1) Drug Enforcement Administration Agent Ethan Wiggins' testimony, and (2) voluminous wiretapped phone call recordings entered as exhibits and played for the jury.

The jury returned a guilty verdict as to the indicted drug conspiracy charge, finding specifically that Mr. Franklin conspired to distribute 50 grams or more of methamphetamine.[1] Doc. 275; Doc. 435 at 231. Prior to sentencing, Mr. Franklin filed a motion and sentencing memorandum outlining his request for a variance based on lacking empirical study on the methamphetamine guideline calculations and Mr. Franklin's severe history of childhood abuse. Doc. 373; Doc. 374.

Mr. Franklin asserted these points at the November 29, 2023, sentencing hearing as he argued for a downward variance from the 360 to life guideline range to a sentence of 188 months. Doc. 417 at 5-9. The

---

[1] The jury also returned a guilty verdict regarding Ms. Washington for conspiring to possess with intent to distribute 5 grams or more of methamphetamine. Doc. 435 at 231-32.

3

United States opposed arguing in favor of a low end 360-month guideline sentence. *Id.* at 14. The district court rejected Mr. Franklin's variance arguments but did sentence under the guideline range by sentencing Mr. Franklin to 320 months based upon Mr. Franklin's co-defendants' sentences, taking into consideration their acceptance of responsibility and varied levels of involvement in the conspiracy. *Id.* at 13, 17, 20; *see also* Doc. 392. The district court also ordered a five-year period of supervised release, imposed the mandatory and standard supervision conditions and specifically outlined the special conditions of supervised release. *Id.* at 22. Mr. Franklin objected to the reasonableness of the imposed sentence as greater than necessary under 18 U.S.C. § 3553(a). *Id.* at 23.

This timely appeal followed. Doc. 398.

## 2. Statement of the Facts

The United States called three witnesses with DEA Agent Wiggins providing the vast majority of the evidence against Mr. Franklin. Doc. 432 at 26-87; Doc. 435 at 22-54. From Wiggins, the jury heard background information on drug investigations including explanation of

controlled buys, coded drug language, and common drug weights and pricing. Doc. 432 at 27-41.

Wiggins explained that the investigation that led to Mr. Franklin started in the fall of 2020 with a confidential informant providing information on targeted individuals in both Phenix City, Alabama, and Columbus, Georgia. *Id.* at 46. When the initial target of this investigation was murdered, the confidential informant gave Mr. Franklin's name to investigators as the person who would "pick up the slack that would be left by the individual who was murdered...". *Id.* After undertaking investigative efforts, Wiggins explained that law enforcement obtained authorization for a wiretap on a prepaid phone with no subscriber information as well as a second phone number.[2] Through Wiggins, the United States admitted as Exhibit 3, a flash drive containing audio files from the wiretap, and then proceeded to play 25 to 30 calls while questioning Wiggins about the content of each call after the jury heard

---

[2] The United States connected this phone to Ms. Washington when it received the subscriber information from a TracFone subpoena returned during trial. Doc. 435 at 3-4, 53-54.

the audio.[3] *Id.* at 50, 58-77, 81-86; Doc. 435 at 22-30. Wiggins immediately identified the voices on these calls for the jury, which included Wiggins' testimony that Mr. Franklin was on these calls. *See* Doc. 432 at 58, 60, 62, 67-73. The United States' Exhibit 4, transcripts of these calls, also listed the "identities" of the voices on each call. *Id.* at 56 (United States' Exhibit 4); *see* Doc. 435 at 11-12. In addition, Wiggins repeatedly interpreted language from these calls for the jury as to both coded drug language as well as offering interpretation of certain situations and phrases from these calls to all indicate to the jury of a drug distribution scheme. *See* Doc. 432 at 59, 62, 63, 65-73, 85; Doc. 435 at 26.

Wiggins did not explain how he could identify Mr. Franklin's voice on these calls until the second day of his testimony. Doc. 435 at 22. He explained that he oversaw three controlled drug purchases involving a confidential informant and Mr. Franklin, that he monitored an audio feed of these interactions, and could now identify Mr. Franklin's voice on the wiretapped calls. Doc. 435 at 36-37. Wiggins had no personal interactions

---

[3] The United States also admitted Exhibit 4, transcripts of each admitted wiretap call. Doc. 432 at 56.

with Mr. Franklin and none of the audio from these controlled buys was recorded. *Id.* at 63, 64-66.

Wiggins also testified to a Toyota Camry belonging to Mr. Franklin's sister, which was located at an apartment complex in Columbus, Georgia, where Wiggins believed Mr. Franklin lived. *Id.* at 29-30. Wiggins explained that drugs were found in this car and turned over to the DEA. *Id.* at 30.

The two other witnesses against Mr. Frankin testified about this car. *Id.* at 130, 141. Stephen Stokes testified that he worked for United Auto Recovery, a Columbus, Georgia-based repossession business. *Id.* at 131. On May 18, 2021, Stokes repossessed the Camry at issue and photographed its contents as part of the business' inventory process. *Id.* at 133-34. Stokes noticed a pistol in a black bag along with drugs. *Id.* at 134-35. He called police. *Id.* Officer Issac Sanchez responded to this call and took possession of the pistol and drugs. *Id.* at 141-43.

Wiggins appears to have sent the recovered suspected drug evidence to a laboratory for testing. *Id.* at 33. The United States then admitted numerous lab report exhibits, 11A-11G, through Wiggins describing the drug analysis done on each item. *Id.* at 33-36. No one associated with the

7

laboratory testified. There were no objections to the admission of United States Exhibits 11A through 11G. *Id.* at 33.

### 3. Standard of Review

This Court reviews evidentiary rulings also for an abuse of discretion. *United States v. Carthen*, 906 F.3d 1315, 1320 (11th Cir. 2018).

"If a defendant's Confrontation Clause rights are violated, the error should be analyzed on direct review under *Chapman*'s[4] harmless beyond a reasonable doubt standard." *Al-Amin v. Warden Georgia Dept. of Corrections*, 932 F.3d 1291, 1302 (11th Cir. 2019). However, when no Confrontation Clause objection occurred, as in this case, this Court reviews for plain error." *United States v. Arbolaez*, 450 F.3d 1283, 1291 (11th Cir. 2006).

---

[4] *Chapman v. California*, 386 U.S. 18 (1967).

## SUMMARY OF THE ARGUMENT

Mr. Franklin is entitled to a new trial or a new sentencing hearing on several grounds. First, law enforcement testimony "interpreting" drug language was impermissible and invaded the province of the jury. Second, the Government violated Mr. Franklin's right to confront his accusers by introducing Exhibit 12, laboratory analysis reports, through the primary law enforcement officer opposed to the laboratory analyst. Finally, Mr. Frankin is due a new sentencing hearing due to procedural errors that resulted in miscalculation of his criminal history category and inadequate consideration of the § 3553(a) factors.

## ARGUMENT

## I. The district court erred by allowing the United States to present testimony of speculative interpretive commentary regarding wiretapped phone calls.

The United States' case against Mr. Franklin hinged on Agent Wiggins' testimony and the recorded wiretapped phone calls admitted during his testimony. Doc. Doc. 432 at 26-87 (Wiggins' testimony); Doc. 435 at 22-54 (Wiggins' testimony); Doc. 435 at 50-51 (United States' Exhibit 3, wiretap recordings); Doc. 435 at 56 (United States' Exhibit 4, wiretap transcripts). Wiggins testified over the course of two days and the jury heard voluminous recorded calls during his testimony—far exceeding the brief testimony of the United States' two other witnesses who testified, including cross-examination, over the course of approximately 14 pages of the transcript. *Compare* Doc. 432 at 26-87 and Doc. 435 at 25-54 *with* Doc. 435 at 130-44.

The bulk of Wiggins' testimony involved the United States taking him through recorded wiretap calls and Wiggins' interpretation of these calls. This testimony exceeded the boundaries of what is permissible because it "strayed into speculation and unfettered wholesale interpretation of the evidence." *See United States v. Hawkins*, 934 F.3d 1251, 1261 (11th

10

Cir. 2019). Although trial counsel filed a pretrial motion to exclude this type of speculative testimony under *Hawkins*, there were no contemporaneous objections during Wiggins' testimony resulting in this testimony constituting plain error.

Without any contemporaneous objections, Mr. Franklin raises this issue for the first time on appeal requiring plain error review analysis. This requires Mr. Franklin to prove (1) an error has occurred; (2) the error was plain; (3) the error affected substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). To be plain, the error must be clear under current law, i.e., decided by this Court or the Supreme Court. *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000).

Historically, "experienced narcotics agents may testify as experts to help juries understand the drug business, codes, and jargon." *Hawkins*, 934 F.3d at 1261; *see United States v. Holt*, 777 F.3d 1234, 1265 (11th Cir. 2015) ("The operations of narcotics dealers are a proper subject for expert testimony under Rule 702," and "an experienced narcotics agent may testify as an expert to help a jury understand the significance of

11

certain conduct or methods of operation unique to the drug distribution business." *United States v. Garcia,* 447 F.3d 1327, 1335 (11th Cir. 2006) (internal quotation marks omitted)."). This does not, however, allow narcotics agents freedom to testify carte blanche about their opinion of conversations. *Hawkins*, 934 F.34 at 1261.

This Court has previously acknowledged "that particular difficulties, warranting vigilance by the trial court, arise when an expert, who is also the case agent, goes beyond interpreting code words and summarizes his beliefs about the defendant's conduct based upon his knowledge of the case." *United States v. Emmanuel*, 565 F.3d 1323, 1335 (11th Cir. 2009) (quoting *United States v. Dukagjini*, 326 F.3d 45, 53 (2d. Cir. 2003)). This type of testimony carries an inherent risk of "unfairly providing the government with an additional summation by having the expert interpret the evidence, and may come dangerously close to invading the province of the jury." *Hawkins*, 934 F.3d at 1266 (quoting *Emmanuel*, 565 F.3d at 1335-36) (cleaned up).

And these issues do not arise only when law enforcement officials testify as experts due to training and experience. *Id.* at 1265. As *Hawkins* observed:

12

Moreover, much of Agent Russell's troubling testimony would be improper as lay testimony even if offered as such. This is because "a case agent testifying as a lay witness may not explain to a jury what inferences to draw from recorded conversations involving ordinary language. At that point, his testimony is no longer evidence but becomes argument." *Marcus Freeman*, 730 F.3d at 598 (citation omitted)); see also *United States v. Kilpatrick*, 798 F.3d 365, 380–81 (6th Cir. 2015) (same); *United States v. Kevin Freeman*, 498 F.3d 893, 905 (9th Cir. 2007) ("[T]he interpretation of clear statements is not permissible, and is barred by the helpfulness requirement of both Fed. R. Evid. 701 and Fed. R. Evid. 702." (quoting *United States v. Dicker*, 853 F.2d 1103, 1109 (3d Cir. 1988))); *United States v. Yuri Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) ("[O]pinion testimony, whether offered by a lay witness pursuant to [Rule 701], or by an expert pursuant to [Rule 702], ... is not properly received 'merely [to] tell the jury what result to reach.' " (last alteration in original) (quoting Fed. R. Evid. advisory committee's notes on 1972 proposed rules)); cf. *Marcus Freeman*, 730 F.3d at 600 ("For the same reasons that many of [the agent's] opinions were not helpful to the jury as lay testimony under Rule 701(b), and therefore inadmissible, his opinions would not have been helpful as expert testimony under Rule 702(a).").

*Id.* at 1265-66.

The same problem from *Hawkins* exists in Mr. Franklin's case with Wiggins's testimony. Through Wiggins, the United States offered interpretations of what was being discussed on the wiretapped calls. This included testimony that certain words were codes for drugs or meant certain quantities. Doc. 432 at 60, 61, 62, 66-67, 68, 69, 70, 73, 83, 84, 85;

13

Doc. 435 at 25, 26, 27. Wiggins went so far to define "weed," certainly a commonly understood term. Doc. 432 at 75.

It included Wiggins' repeated opinion on the identity of the people on the calls based on his investigative efforts, including Mr. Franklin. Doc. 432 at 58-59, 60, 65, 70, 71, 74, 82, 83, 85; Doc. 435 at 25, 28-29. This identification of Mr. Franklin contained Wiggins' interpretation of a call that used the nickname "Bruda" and Wiggins' opinion that Bruda referred to Mr. Franklin. Doc. 432 at 65.

It also included speculative interpretation of phrases used. For example, after the United States played call 42, Wiggins testified that he believed a reference to "a whole one" meant the callers were communicating about a "whole kilogram." Doc. 432 at 59-60. After listing to call 50, Wiggins interpreted "them things" to be a reference to a kilogram quantity of drugs. *Id.* at 62. Regarding this same call, Wiggins essentially told the jury that Frankin was negotiating with another person to sell a kilo or more of methamphetamine. *Id.* at 62-63. He interpreted the phrase "putting something on" for the jury telling them it meant diluting the purity of methamphetamine. *Id.* at 65-66. And after listening to call 3903, Wiggins explained "that brown thing" as heroin,

14

which is typically brown in color. Doc. 435 at 26. His testimony included other interpretations on weight and costs of suspected drugs. Doc. 432 at 60, 61-62.

Although Wiggins was not offered as an expert witness—like the agent in *Hawkins*—the testimony was improper regardless of whether it was presented as lay or opinion testimony. *Hawkins*, 934 F.3d at 1265; *but see United States v. Gbenedio*, 95 F.4th 1319, 1333 (11th Cir. 2024) (distinguishing *Hawkins* based on whether the witness was treated as an expert or lay witness). This Court, and others, have held that "a case agent testifying as a lay witness may not explain to the jury what inferences to draw from recorded conversations involving order language. At that point, his testimony is no longer evidence but becomes argument." *Hawkins*, 934 F.3d at 1265 (quoting *United States v. Freeman*, 730 F.3d 590, 598 (6th Cir. 2013)); *see United States v. Kilpatrick*, 798 F.3d 365, 380–81 (6th Cir. 2015) ("[W]hen an agent 'provides interpretations of recorded conversations based on his knowledge of the entire investigation,' the agent could impermissibly testify 'based upon information not before the jury, including hearsay,' and that the jury might think the agent is privy to important knowledge about the case

15

that the jury lacks." (quoting *Freeman*, 730 F.3d at 596); *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007) ("[T]he interpretation of *clear* statements is not permissible, and is barred by the helpfulness requirement of both Fed. R. Evid. 701 and Fed. R. Evid. 702." (quoting *United States v. Dicker*, 853 F.2d 1103, 1109 (3d Cir. 1988))); *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) (["O]pinion testimony, whether offered by a lay witness pursuant to [Rule 701], or by an expert pursuant to [Rule 702], ... is not properly received 'merely [to] tell the jury what result to reach.'").

As in *Hawkins*, error occurred in Mr. Franklin's case because Wiggins' testimony exceeded the scope of permissible opinion by a case agent in his interpretation of the evidence. This error was plain considering this Court's previous opinions. And this error affected Mr. Franklin's substantial rights due to the United States presenting almost its entire case against Mr. Franklin through Wiggins and the wiretapped calls. While this Court observed in *Hawkins* that the impermissible testimony constituted about half of the trial testimony, Wiggins' testimony in this case is far more substantial constituting all but approximately 14 pages of the testimony presented from two very brief witnesses. Therefore, this

16

Court should exercise its discretion and reverse Mr. Franklin's conviction.

## II. The district court committed plain error by admitting Government Exhibit 12, laboratory testing analysis, through the case agent in violation of Mr. Franklin's Sixth Amendment right to confront his accuser.

Wiggins not only interpreted the wire tapped calls, but he also testified to the findings of DEA laboratory findings that the Government admitted though Exhibit 12. Doc. 435 at 30, 38; Doc. 277-21, While there was no objection to this Exhibit at trial, Wiggins' testimony as to analysis and weight of drugs obtained through controlled buys and from the vehicle law enforcement connected to Mr. Franklin through his sister, violated his constitutional confrontation rights. This plain error requires a new trial.

To reiterate, to prevail on his Confrontation Clause issue, Mr. Franklin must prove (1) an error has occurred; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Rodriguez*, 398 F.3d at 1298.

17

The Sixth Amendment sets forth a defendant's rights under the Confrontation Clause: "[i]n all criminal prosecutions, . . . the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Under *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the Confrontation Clause allows "[t]estimonial statements of witnesses absent from trial ... only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."

In *Bullcoming v. New Mexico*, 564 U.S. 647, 659 (2011), the Court indicated that the State's failure to assert reasoning for the unavailability of the expert who performed testing, aside from offering that this individual was on unpaid leave, weighed in favor of the appellant's confrontation argument. Mr. Franklin is not aware of any discussion in the record on the unavailability of any of the several analysists associated with testing and weighing the submitted substances. *See*. Doc. 277-21 (listing several analysists); *see also United States v. Caraballo*, 595 F.3d 1214, 1218-29 (11th Cir. 2010) (discussing the primary purpose test).

There is no doubt that forensic reports are included within the structures of the *Crawford* Court's interpretation of the Confrontation

Clause. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 329 (2009). In other words, forensic reports, such as the multiple laboratory analysis reports at issue here, are testimonial. *Id*. at 324 ("[T]he analysts' statements here—prepared specifically for use at petitioner's trial—were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment."). It is hard to imagine how Wiggins' decision to send these substances to the laboratory for testing would be for any purpose other than to use the results against Mr. Franklin in pursuit of a criminal conviction. *See* Doc. 432 at 30-33, 38-40.

Underlying the Court's determination in *Melendez-Diaz*, was the importance of cross-examination of expert findings. *Id*. at 317-20. Specifically, to ensure accuracy, to weed out manipulation of results, and to test the expert's competency. *Id*. at 318-19 ("Confrontation is designed to weed out not only the fraudulent analyst, but the incompetent one as well."). Certainly, here, Wiggins had no expert knowledge or connection to any of the chemical testing completed. Doc. 432 at 27 (discussing Wiggins' background as a police officer); Doc. 435 at 30, 38 (indicating Wiggins sent the items to the laboratory for testing).

While *Melendez-Diaz* established that forensic reports are testimonial, *Bullcoming* addressed a follow-up question—who must provide the live testimony to admit these reports under the Confrontation Clause? For context, Bullcoming faced an intoxicated driving charge and the State sought to admit a laboratory report showing his blood alcohol concentration. *Bullcoming*, 564 U.S. at 651-52. But the State did not call the expert who had performed the testing and signed the certified report. *Id.* at 651. Instead, the State admitted the test result through a substitute expert who had familiarity with the laboratory testing, but "had neither participated in nor observed the test on Bullcoming's blood sample." *Id.*

The United States Supreme Court held that admission of one expert's report through a substitute expert violated the Confrontation Clause. *Id.* at 657-58. Specifically, the Court held:

> Our answer is in line with controlling precedent: As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness. Because the New Mexico Supreme Court permitted the testimonial statement of one witness, *i.e.,* Caylor, to enter into evidence through the in-court testimony of a second person, *i.e.,* Razatos, we reverse that court's judgment.

20

*Id.* The Court reasoned that the substitute expert, while possessing general familiarity with the laboratory procedures, could not convey the testing analyst's observations or anything about the actual testing performed nor could the substitute analyst speak to any possible lapses in the qualifications of the analyst performing the testing. *Id.* at 661-62. "Accordingly, the Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination." *Id.* at 662; *see also Smith v. Arizona, v. Arizona*, 602 U.S. __, 144 S. Ct. 1785, 1791 (June 21, 2024).

The Court next took up the issue of forensic reports and the Confrontation Clause in *Williams v. Illinois*, 567 U.S. 50 (2012). But as the Court just explained in *Smith*, 602 S. Ct. at 1794, the Court's fractured plurality decision in that case resulted in confusion on substitute expert testimony and the confrontation clause. In the just released *Smith* case, the Court did not determine the testimonial aspect of the evidence at issue due to an undeveloped record, but it sounded the confrontation clause alarm when the Government substituted one expert

21

who relied completely on the findings of the non-testifying expert, explaining:

> Longoni [the testifying expert] thus effectively became Rast's [the out-of-court lab analyst] mouthpiece. He testified to the precautions (she said) she took, the standards (she said) she followed, the tests (she said) she performed, and the results (she said) she obtained. The State offered up that evidence so the jury would believe it—in other words, for its truth. So if the out-of-court statements were also testimonial, their admission violated the Confrontation Clause. Smith would then have had a right to confront the person who actually did the lab work, not a surrogate merely reading from her records.

*Id.* at 1801.

With this background on the United State Supreme Court's treatment of forensic reports under the Confrontation Clause, the laboratory analysis reports, entered as Government Exhibit 12, are testimonial. We know this from *Melendez-Diaz*, 557 U.S. at 329, *Bullcoming*, 564 U.S. at 657-58, and the formality analysis contained in Justice Thomas's concurrence in *Williams*, 567 U.S. at 110-12. Like the report at issue in *Bullcoming*, Government Exhibit 12 contains numerous official examination reports signed by forensic chemists who completed the work and signed by the senior forensic chemist who approved the report. Doc.

277-21; *see Bullcoming*, 564 U.S. at 651 (noting a forensic laboratory report certifying a blood test result).

Under *Bullcoming*, admission of Government Exhibit 12 through Wiggins, a police officer who cannot even be considered a substitute expert like in the above-discussed cases, violated the Confrontation Clause. *See id.* Just like in *Bullcoming*, Wiggins "had neither participated in nor observed the test . . .". *Id.* Wiggins was not involved with the testing whatsoever.

But that did not stop him from offering the results of each of the lab reports contained in Government Exhibit 12. Doc. 435 at 30-32, 38-39. As Wiggins' testimony shows, he told the jury the following results from the substances submitted to the laboratory from Mr. Franklins' sister's car: 16 grams of fentanyl, 5.19 grams of crack cocaine, six ecstasy pills, tablets containing methamphetamine and caffeine, and 57 grams of marijuana. Doc. 435 at 30-32. Wiggins also testified to laboratory reports associated with the three controlled buys that Wiggins testified about indicating: 51.9 grams of methamphetamine, 35.17 grams of powder cocaine, and 27 grams of power cocaine. *Id.* at 38-39. All of this was improper and

23

prohibited Mr. Franklin from confronting the lab analyst who completed the applicable testing.

This is plain error as there is plenty of binding precedent in the context of forensic science evidence and the confrontation clause, as described above, to know that a police officer with no connection to the laboratory testing cannot relay those results under the constitution. *See United States v. Charles*, 722 F.3d 1319, 1331 (11th Cir. 2013) (rejecting relief for a Confrontation Clause violation under plain error review on an issue of first impression); *see also Aguillard*, 217 F.3d at 1321 (plain error requires current binding law).

Plus, Mr. Franklin meets the remaining plain error requirements as the Confrontation Clause violation here affected his substantial rights as well as the fairness or integrity of the proceedings. *See Rodriguez*, 398 F.3d at 1298. Here, the Government's case against Mr. Franklin focused on Wiggins' testimony and his recitation of the wiretap calls and Wiggins' purported ability to identify Mr. Franklin's voice on the calls. But the wiretapped calls cannot be viewed in isolation to uphold Mr. Franklin's conviction despite the Confrontation Clause violation that occurred.

24

First, Wiggins' credibility as to the controlled buys was paramount here. It was only from the supposed live audio of these informant buys that Wiggins was able to identify Mr. Franklin's voice. Doc. 435 at 63. And defense counsel attacked Wiggins by repeatedly asking why these controlled buys had not been recorded? Doc. 435 at 62-66. Wiggins had no response other than to say that he could have recorded these buys with the informant but didn't. *Id.* This is all to say that allowing Wiggins to testify to the drug analysis bolstered his credibility as to the controlled buys and ability to identify Mr. Franklin's voice. This is not inconsequential.

Second, Mr. Franklin had no ability to test the credibility of the drug analysis or weights contained in the analysis reports, which violated his substantial rights and the fairness and integrity of his sentencing. His guideline range, of course, calculated his offense level based on converted drug weight. Doc. 389 at 8-11. Specifically, Mr. Franklin's offense level was calculated as involving 10,529.69 kilograms of converted drug weight. *Id.* at 11. This amount was based, at least in part, on the laboratory analysis that Mr. Franklin had no way to question at trial. *Id.* at 8-9. This all led to a base offense level offense of 34 based on a

25

converted drug weight. Without any ability to question the accuracy of the laboratory testing at trial, the use of the analysis to calculate Mr. Franklin's base offense level and his guideline range that followed constituted plain error.

## III. Mr. Franklin is entitled to a new sentencing hearing due to procedural and substantive sentencing errors.

The district court committed errors that require a new sentencing. First, it procedurally erred in its criminal history point calculation resulting in a category V instead of the correct category IV. This miscalculation occurred because the district court added one criminal history point for an uncounseled misdemeanor sentence that resulted in a suspended jail sentence in violation of § 4A1.2. Second, the district failed to adequately consider the § 3553(a) factors. This is evident from the district court's listing of the factors without individualized application except for its focus on criminal history opposed to a fuller view of Mr. Franklin's personal characteristics.

As to sentencing review, this Court has explained:

First, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors,

selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." If we conclude that the sentence is procedurally sound, the second step is to review the "substantive reasonableness" of the sentence, taking into account the totality of the circumstances, "including the extent of any variance from the Guidelines range."

*United States v. Alfaro-Moncada*, 607 F. 3d 720, 734-35 (11th Cir. 2010)

(quoting *Gall v. United States,* 552 U.S. 38, 51 (2007)) (cleaned up). Mr.

Franklin's 320-month sentence suffers from multiple procedural and

substantive errors under this analysis.

### A. The district court committed a plain error by miscalculating Mr. Franklin's criminal history score.

A procedural error occurred when Mr. Franklin's criminal history calculation added one point for uncounseled misdemeanor offenses resulting in suspended custodial sentences.

Although Mr. Franklin's PSR indicated a total criminal history of 11 points (category V), the United States pointed out at sentencing that this score was not correct based on changes in the 2023 sentencing guidelines pertaining to the commission of the current offense while under a criminal justice sentence. Doc. 417 at 3-4. The district court agreed; however, even with a recalculated criminal history score of 10, Mr.

27

Franklin remained in category V. However, the criminal history score should have excluded an uncounseled misdemeanor conviction resulting in a correct total of 9 or category IV. This miscalculation is a plain error under the circumstances.

Mr. Franklin received one criminal history point for uncounseled offenses that resulted in suspended custodial sentences in violation of U.S.S.G. § 4A1.2.[5] Doc. 389 at 14-15; Doc. 417 at 4-5. The commentary to § 4A1.2 provides: "Background:  Prior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed." Mr. Franklin's PSR indicates that he received one criminal history point for prior offenses when "[a]ttorney representation is unknown[]" for priors involving suspended custodial sentences. Doc. 389 at 14-15. The question then becomes whether uncounseled priors resulting in suspended sentences can be counted in Mr. Franklin's criminal history points? The answer is no because under *Alabama v. Shelton*, 535 U.S. 654, 662 (2002),

---

[5] *See* Commentary, background following n.12, U.S.S.G. § 4A1.2.

28

"[a] suspended sentence is a prison term imposed for the offense of conviction."

In *United States v. Acuna-Reyna*, 677 F. 3d 1282, 1282 (11th Cir. 2010), this Court considered *Shelton* and reviewed whether the district court could "assess a criminal history point for an uncounseled misdemeanor conviction where the defendant was sentenced to probation and a monetary fine." In addressing this issue and *Shelton*, the parties argued:

> Acuna–Reyna relies on *Alabama v. Shelton*, 535 U.S. 654, 662, 122 S.Ct. 1764, 1770, 152 L.Ed.2d 888 (2002), to support his argument that the mere threat of incarceration in a future proceeding to revoke his probation entitled him to counsel. The government responds that the right to counsel under the Sixth Amendment did not apply to Acuna–Reyna's misdemeanor conviction because Acuna–Reyna did not receive a sentence of imprisonment, suspended or otherwise, but instead received a sentence of probation only. *See United States v. Pollard*, 389 F.3d 101, 105–06 (4th Cir.2004) (holding that the right to counsel does not attach where misdemeanor conviction results in a sentence of probation only); *United States v. Perez–Macias*, 335 F.3d 421, 427–28 (5th Cir.2003) (same).

*Id.* at 1284. This Court assumed that a case resulting in a probationary sentence requires assistance of counsel, but still allowed the imposition of criminal history points based on the remaining monetary fine that was imposed for the underlying offense. *Id.* at 1284. The reason being that

29

"when a sentence is imposed in violation of a defendant's Sixth Amendment right to counsel, "the proper remedy is to vacate that portion of the sentence offensive to the Sixth Amendment without doing harm to the defendant's conviction or the remaining, constitutionally inoffensive, portions of his sentence." *Id.* at 1284-86 (cleaned up). All said, this Court set aside the uncounseled probationary portion of the prior offense but still allowed the imposition of one criminal history point based on the imposed fine, which remained constitutionally sound despite the lack of counsel. *Id.* at 1286.

Considering this Court's reasoning in *Acuna-Reyna*, the criminal history point that Mr. Franklin received for an uncounseled misdemeanor offense resulting in a suspended sentence cannot stand under the Sixth Amendment and *Shelton*. Nor is there any type of additional sentence noted, such as a fine, in relation to the uncounseled conviction at issue to allow the criminal history point to remain. *See* Doc. 389 at 14-15. Thus, based on the PSR's indication of the suspended nature of the custodial sentence combined with a lack of representation, Mr. Franklin's criminal history must be reduced to 9 points or category IV. *See* U.S.S.G., Ch. 5, Part A.

30

Mr. Franklin did not make this argument in the district court; therefore, plain error review applies. To meet this standard, Mr. Franklin must show "(1) an error occurred; (2) the error was obvious; (3) it affected his 'substantial rights in that it was prejudicial and not harmless;' and (4) it 'seriously affects the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019) (quoting *United States v. Beckles*, 565 F.3d 832, 842 (11th Cir. 2009)).

Here, the error in allowing for a criminal history point to apply based on an uncounseled misdemeanor suspended custodial sentence is both established based on the above reasoning and "obvious" based on the background commentary to § 4A1.2, which plainly addresses the counting of uncounseled misdemeanor cases only when they did not result in imprisonment. From *Shelton* and this Court's reasoning in *Acuna-Reyna* it is equally apparent that a suspended custodial sentence constitutes a sentence when imprisonment is imposed. *E.g. Shelton*, 535 U.S. at 662 ("A suspended sentence is a prison term imposed for the offense of conviction.").

31

Consideration of whether the miscalculation of Mr. Franklin's criminal history category affected his substantial rights requires consideration of the change in his criminal history category of V to IV. As the United States Supreme Court has explained "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189 (2016).

Granted a change in the criminal history category here does not change Mr. Franklin's guideline range of 360 to life. However, the district court's focus on Mr. Franklin's criminal history at sentencing and an apparent desire to focus on deterrence due to repeated criminal history indicates that Mr. Franklin was prejudiced when the district court imposed a sentence under the mistaken belief that he had a higher criminal history category than he actually does. *See* Doc. 417 at 20-21.

Finally, as to the last plain error standard, "[a] faulty enhancement" will usually met this requirement "at least when the other three factors are met." *Bankston*, 945 F.3d at 1320. Based upon the error in criminal

32

history category and considering the argument that follows, Mr. Franklin is entitled to resentencing.

## B. The district court erred by failing to adequately consider the § 3553(a) sentencing factors.

Another procedural sentencing error occurred in Mr. Franklin's case when the district court recited the applicable § 3553(a) factors but did not engage in an individualized application of these factors to Mr. Franklin's case. The result here is that the district court failed to explain why a 320-month sentence was necessary to meet the § 3553(a) sentencing factors opposed to something closer to the 188 month sentence he requested.

Section 3553 governs the factors a district court must consider in imposing a sufficient sentence. 18 U.S.C. § 3553(a). The court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" § 3553(a)(1). It must also consider:

[T]he need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D)to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

§ 3553(a)(2)(A)-(D).

As part of sentencing review, this Court must ensure that the district court did not procedurally err by failing to adequately consider the § 3553(a) sentencing factors. *United States v. Livesay*, 525 F.3d 1081, 1091 (11th Cir. 2008). For example, in *Livesay*, 525 F.3d at 1093, this Court observed that a listing of the § 3553(a) factors is insufficient when the district court failed to give reasoning in relation to those factors for its variance from the guideline range. This Court explained: "the district court provided nothing more than a conclusory statement that a variance from the advisory Guidelines range of 78 to 97 months' imprisonment to the ultimate sentence of 60 months' probation (with 6 months' home detention) satisfied Congress's important concerns of deterrence." *Id.* at 1094. This required the sentence to be vacated and the case remanded. *Id.* at 1095.

Similarly, the district court did not engage in an individualized application of the § 3553(a) sentencing factors to reach a 320-month sentence. At the outset, the district court recited a laundry list of the

statutorily applicable sentencing factors. Doc. 417 at 20. It then did not comment on the application of the majority of these listed factors to Mr. Franklin's case. Instead, the district court focused on Mr. Franklin's "history and characteristics." *Id.* at 21. This focus on Mr. Franklin's characteristics, however, was directed only toward his criminal history involving past drug-related convictions. *Id.* at 20-21. What did not receive mention were any of Mr. Franklin's other personal characteristics such as his very troubled childhood as outlined in the defense sentencing memorandum, the PSR, or during defense counsel's sentencing argument. Doc. 389 at 9-11; DOC 374; Doc. 417 at 8-9, 17. And although the district court commented that it was not relying on Mr. Franklin's upbringing to grant a sentencing variance as the defense requested, it gave no reasoning for this refusal and then made no mention of how this aspect of Mr. Franklin's personable characteristics played into the district court's § 3553(a) reasoning. By its singular focus on Mr. Franklin's criminal history, the district court failed to adequately consider the § 3553(a) factors; therefore, a new sentencing is required.

## CONCLUSION

Based on the foregoing, this Court must vacate Mr. Franklin's

conviction and sentence and remand for new proceedings

Respectfully submitted July 17, 2024.

/s J.D. Lloyd
J.D. Lloyd
Law Office of J.D. Lloyd, LLC
2320 Arlington Ave., S.
Birmingham, AL 35205
(205) 538-3340
JDLloyd@JDLloydLaw.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 6,805 words and thus complies with the type-volume limitations of Rule 32(a)(7)(B)(i), Fed. R. App. P.  This brief is written in 14-point Century Schoolbook.

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed a copy of the Appellant's brief with the Clerk of the Court on July 17, 2024, using the EM/ECF system, which will provide notice of the filling to all counsel of record. On this same day, the original and additional copies of this brief were filed by United States first-class mail, addressed as follows:

> Clerk's Office - Appeal No. 23-13973
> U.S. Court of Appeals - Eleventh Circuit
> 56 Forsyth Street NW
> Atlanta, GA 30303

/s J.D. Lloyd
J.D. Lloyd

*Counsel for Appellant*

37